# CIRCUIT COURT OF HENRICO COUNTY

Jennifer Mason Cummings

v.

Carleton R. Cummings, III

June 28, 2010

Case No. CL09-1260

BY JUDGE DANIEL T. BALFOUR

The Court has considered the evidence presented, briefs submitted, and the argument of counsel in this matter. Counsel stipulated and classified the parties' assets, their value, and percentages of interest for most all assets. The remaining issues are classification and distribution of sale proceeds from a jointly owned condominium in Wintergreen, Virginia, and a Toyota Sequoia automobile.

Mrs. Cummings owned a home on Hanover Avenue in the City of Richmond and owned an automobile with no debt prior to their marriage. After marriage, they first lived in her home, which both parties agree was her separate property. She sold that home, and the proceeds and gifts from her parents allowed the parties to purchase a home in Lower Tuckahoe in Goochland County. They moved again and now live in Henrico County.

During the marriage, Mrs. Cummings' father, Mr. Mason, contributed over 1.8 million dollars to the parties, including child support due by his son-in-law, Mr. Cummings, for two children by a previous marriage.

Mr. Mason provided the parties income from investments of the A&N Investment Company. He also made annual gifts for his estate planning purposes to the parties, thus perhaps lessening the "exemption equivalent" allowed when computing estate taxes upon his death.

In June 2001, the parties bought a condominium at the Wintergreen Resort for $300,000, of which $50,000 was a down payment, and the parties agree that the down payment is classified as marital. The parties then borrowed $250,000 from Mr. Mason, the note for which they both signed. The parties owned the property as tenants by the entirety. Improvements to the condominium cost $82,521.00. Later, on January 21, 2002, Mr. Mason made a check payable to Mrs. Cummings in the amount of $132,226.76 of which the memo stated "Unified Credit Payoff Mortgage Hanover Richmond." The parties do not disagree that this is separate property, as it paid off the mortgage on her separate premarital Hanover Avenue home. Also on January 21, 2002, Mr. Mason wrote a check payable to Jennifer Cummings in the amount of $237,713.26 with the memo stating "Unified Credit Payoff Wintergreen mortgage." Mrs. Cummings paid her father the balance of the mortgage on the Hanover property and then paid the amount of $237,713.26 to her father as a payoff for the Wintergreen mortgage balance. Subsequently, on March 6, 2003, Mr. and Mrs. Mason filed Federal Gift Tax Returns citing in detail fifteen gifts by Mr. Mason and fourteen gifts by Mrs. Mason.

The parties sold the Wintergreen property in 2007 for the sum of $522,507.00. "The parties agree … that the proceeds can be traced into the three accounts identified below:" Smith-Barney Investments, Account No. 0266, $26,018; Smith-Barney Investments, Account No. 3950, $575,691; Capital One Money Market, Account No. 2604, $71,828.

The parties disagree as to what portion of the sum of the three accounts should be classified marital and what should be classified separate.

The parties concurred on evidence for several factors listed in Virginia Code § 20-107.3, including the date of separation, the date of marriage, and that both parties are in good physical and mental health. They agreed that the parties have college educations, and Mrs. Cummings has an advanced degree.

The nonmonetary contributions by Mrs. Cummings included cooking and cleaning the home. She managed the parties' financial affairs which included paying household bills, monitoring investments, and maintenance and care of their properties. The parties often ate out and enjoyed a lawn service and a maid service.

The Court has considered all of the factors in Virginia Code § 20-107.3. In addition to the factors noted above, the Court considered the duration of the marriage, how and when specific items of marital property were acquired, the debts and liabilities of the spouses, the liquid and non-

liquid character of the marital property, as well as the tax consequences, the use of the marital property in anticipation of divorce, and the circumstances leading to the parties' separation.

The Court considered the monetary contributions as well as the nonmonetary contributions of the parties. Mr. Cummings earned considerable amounts during the marriage, yet both parties were able to live above their means due to the separate contributions from Mr. Mason. The Court must consider Factor # 6, "How and when specific items of such marital property were acquired". In this case Mr. Mason gifted considerable money to the parties.

The three key elements to establish a gift are intent, delivery, and acceptance, all of which must be proved by clear and convincing evidence.

The Court considered Mr. Mason's gifts to both parties. Mrs. Cummings argues that Mr. Cummings should receive a small amount of the marital properly, since, considering the "catch-all factor," he is leaving the marriage considerably better off financially than before, as he entered the marriage with no home and had debts.

Mr. Cummings argues that, due to the gifts from her father, she only worked a short time during the marriage, and she had the benefit of maid service and other benefits while married, while he continued to work and support the family with his income which exceeded $120,000 per year.

The Court has considered cases cited in various publications, including Peter Nash Swisher, *Virginia Practice Series*, vol. 9, *Family Law: Theory, Practice, and Forms*, 2009 edition. The Court found no cases directly on point. In addition to the cases cited by the parties, the Court considered the unpublished case of *Beck v. Beck*, 2000 Va. App. LEXIS 658. In the *Beck* case, the wife received monies from her father, as in this case, and used the funds for a down payment on the parties' joint real estate. Similarly in this case, money gifted from her father was used to pay off indebtedness on jointly owned real estate. In the *Beck* case, the Court said "The mere fact that the property acquired was jointly titled and was intended to be used as their residence, was insufficient to establish a gift by clear and convincing evidence." In the *Beck* case, the husband practically admitted no gift was intended and assured his wife's father that if the funds were hers, "he had no desire to try and go after it." *Beck v. Beck*, 2000 Va. App. LEXIS 658 at *11.

Having considered all of the above, the Court finds Mr. Mason had donative intent by clear and convincing evidence and made gifts to both Mr. and Mrs. Cummings for the Wintergreen property. The Court finds that evidence of intent to make a gift for tax purposes required the gift *had*

to be made to two parties to accomplish the maximum gift tax benefit of $10,000 to each. (See Mr. Cummings' Exhibit G-5, which are the gift tax returns.) The Court secondly finds that other undisputed gifts to both parties by Mr. Mason during the marriage support a similar intent for the Wintergreen property, as no different intent was shown for this property. The percent of the selling price, in three joint accounts, traceable to the gifts, the Court finds is marital property.

For reasons stated herein, the Court rules that wife should receive 60% of the marital assets and husband 40%.

The parties agree the retirement funds shall be divided, with 50% of the funds to each party.

Based on the testimony of Mr. Mason that he knew the parties were considering separation when he gave the automobile, the Court rules that the Sequoia is separate property and therefore should pass to Mrs. Cummings.

Due to the complexity of this matter and the hard work of both counsel, neither side is awarded attorney's fees.